IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR RATIONAL SEXUAL OFFENSE LAWS; NC RSOL; and JOHN DOE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | 1:17CV53 |
| JOSHUA STEIN, Attorney General of the State of North Carolina; and DISTRICT ATTORNEYS LORRIN FREEMAN (District 10); PAT NADOLSKI (District 15A); and KRISTY NEWTON (District 16A), | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this action,[1] pursuant to 42 U.S.C. § 1983 ("Section 1983" or "§ 1983"),

challenging the constitutionality of five amendments to Article 27A of Chapter 14 of the North

Carolina General Statutes that pertain solely to registered sex offenders.  (*See* ECF No. 33.)

Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

(ECF No. 40.)  For the reasons stated below, the Court will deny Defendants' motion.

## I.    BACKGROUND

Plaintiffs in this action are John Doe,[2] an individual required to register as a sex

offender in North Carolina, and two non-profit organizations that advocate for such

---

[1] Plaintiffs initiated this suit on January 23, 2017.  (ECF No. 1.)  On May 30, 2018, this Court entered an Order which, in pertinent part, "convert[ed] Defendants' [pending] motion to dismiss into a motion for a more definite statement," and ordered Plaintiffs to submit a more definite statement.  (ECF No. 32 at 1, 9, 11.)  In response, Plaintiffs filed their First Amended Complaint for Declaratory and Injunctive Relief (the "Complaint"), which is the operative complaint.  (ECF No. 33.)

[2] This Court entered an Order on August 7, 2017 allowing this Plaintiff to proceed under a pseudonym.  (ECF No. 22 at 4.)

individuals. (ECF No. 33 ¶¶ 23, 29, 31, 44, 46.) Plaintiff John Doe currently resides in North Carolina Judicial District 15A and was convicted for sexual assault in 2002. (*Id.* ¶¶ 22–23.) Plaintiff National Association for Rational Sexual Offense Laws ("NARSOL") and Plaintiff NC RSOL (collectively "Organizational Plaintiffs") are "voluntary membership organization[s]" whose "purpose is to advocate, both legislatively and legally, for the reform of state and national laws regarding sex offender registries and legal restrictions placed on registrants . . . and to seek to vindicate the constitutional rights of its members." (*Id.* ¶¶ 29–31, 44–46.) Organizational Plaintiffs' members include, among others, "current registrants subject to the provisions of the law challenged [in the Complaint] as violating the *Ex Post Facto* clause of the United States Constitution." (*Id.* ¶¶ 32, 47.)

"Defendant Joshua Stein is the Attorney General of the State of North Carolina," who is "charged with defending the interests of the State in all criminal and civil suits." (*Id.* ¶¶ 13–14.) Defendants Lorrin Freeman, Pat Nadolski, and Kristy Newton (collectively, "Individual DA's") are North Carolina district attorneys for Judicial Districts 10, 15A, and 16A, respectively, each of whom "are responsible for the prosecution of crimes in their respective judicial districts." (*Id.* ¶ 18.) All defendants have been sued in their official capacities. (*Id.* ¶¶ 13, 18.)

According to Plaintiff's Complaint, North Carolina passed its first set of statutes pertaining solely to registered sex offenders (the "registry law") in 1995. (*Id.* ¶¶ 8 n.1, 59.) The registry law is a group of statutes "codified at Article 27A of the North Carolina Criminal Code," N.C. Gen. Stat. § 14-208.5 through § 14-208.45. (*Id.* ¶ 8 n.1.) "Th[e] initial registry law did no more than create a database of persons who had been convicted of a relatively small

number of qualifying offenses." (*Id.* ¶ 60.) Under this registry law, among other things: (i) "[r]egistration terminated automatically after ten (10) years and a person could petition for removal from the registry"; (ii) "[t]he registry was maintained by the local sheriff and was available to the public only upon request by a member of the public regarding a specific individual"; (iii) "[r]egistrants were required to mail in notification of any change of address"; (iv) "[v]iolation of the registry law was a Class 3 misdemeanor"; and (v) the law "applied to all persons committing a qualifying offense or who were released from a penal institution after the effective date." (*Id.* ¶¶ 61–64, 66 (citing 1995 N.C. Sess. Laws 545).) Since that time, the North Carolina legislature has passed a number of amendments to the registry law. (*See id.* ¶¶ 68–116.)

In this action, Plaintiffs challenge the constitutionality of the following amendments to the registry law:

a. 2006 N.C. Sess. Laws 247 (2005 N.C. HB 1896) mandating semi-annual, in-person reporting to the local sheriff, giving the local sheriff the authority to require the registrant to report at any time, mandating in-person reporting for any change in registry status, severely restricting where registrants can live, and banning them from jobs that involve the "instruction, supervision, or care of a minor"[ ];

b. 2008 N.C. Sess. Laws 117 (2007 N.C. HB 933) lengthening the registration requirement from ten (10) to thirty (30) years, shortening the time in which a registrant must report to the sheriff any changes of information, and banning registrants from a wide-range of public and private spaces;

c. 2008 N.C. Sess. Laws 220 (2007 N.C. SB 1736) requiring registrants to notify the sheriff of any "online" identifiers and authorizing release of that information to companies;

d. 2009 N.C. Sess. Laws 491 (2009 N.C. HB 1117) barring any registrant from obtaining a "P" or "S" endorsement on their

driver's license ("P" for "passenger" and "S" for "school bus"); and

e. 2016 N.C. Sess. Laws 102 (2015 N.C. HB 1021) reinstituting the ban on registrants from a wide range of public and private spaces after 2008 N.C. Sess. Laws 117 was . . . struck down on First Amendment grounds.

(*Id.* ¶¶ 8a.–8e.) Plaintiffs allege that the retroactive application of each of the above amendments violate the *Ex Post Facto* Clause of the United States Constitution. (*Id.* ¶¶ 277–281.) Defendants move to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[3] (*See* ECF No. 40.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). A motion under Rule 12(b)(1) raises the question "whether [the plaintiff]

---

[3] Defendants' motion and supporting memorandum state that they also seek dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure based, in part, on their contention that Defendants are not "persons" under 42 U.S.C. § 1983 and, therefore, they are improper parties to this action. (ECF No. 40 at 1, 2; ECF No. 42 at 3, 5–6.) As Plaintiffs point out in their response brief, (*see* ECF No. 44 at 2), it appears that Defendants raise this issue in conjunction with their Eleventh Amendment immunity argument, (*see* ECF No. 42 at 4–6.) The Fourth Circuit has acknowledged that "[its] cases have been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000). However, "it would appear that as between Rules 12(b)(1) and 12(b)(2), dismissal based on Eleventh Amendment immunity is typically treated as [an issue] of subject matter rather than personal jurisdiction." *Abdus-Salaam v. Bill Maddalon Unique So. Estates*, No. 3:11cv410, 2012 WL 1569584, at *4 n.3 (W.D.N.C. May 3, 2012). *See Abril v. Virginia,* 145 F.3d 182, 184 (4th Cir. 1998) (addressing dismissal on Eleventh Amendment grounds as dismissal for lack of subject-matter jurisdiction); *Republic of Paraguay v. Allen,* 134 F.3d 622, 626 (4th Cir. 1998) (same). The Court will therefore consider Defendants' argument regarding whether they are "persons" under 42 U.S.C. § 1983 as part of its Eleventh Amendment analysis under Rule 12(b)(1).

has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of proving subject-matter jurisdiction rests with the plaintiff. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When evaluating a Rule 12(b)(1) motion to dismiss, a court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). On a motion to dismiss for lack of standing, a court must construe the complaint in the plaintiff's favor, accepting as true the factual allegations in the complaint. *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

**B.  Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"A district court should dismiss a complaint pursuant to Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir.

2013) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the complaint alleges facts sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway*, 669 F.3d at 452; or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

While a court's evaluation of a Rule 12(b)(6) motion to dismiss is "generally limited to a review of the allegations of the complaint itself," a court may properly consider documents "attached to a complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). Therefore, in addition to considering the Complaint, the Court will also consider the exhibits attached to the Complaint. *See id.*

## III.   DISCUSSION

### A.   Eleventh Amendment Immunity

Defendants first argue that Plaintiffs' lawsuit is barred by the Eleventh Amendment. (*See* ECF No. 42 at 4–6.) Because the Eleventh Amendment acts as a jurisdictional bar, courts must resolve the issue of Eleventh Amendment sovereign immunity before reaching the merits of a case. *See Edelman v. Jordan*, 415 U.S. 651, 677–78 (1974).

Section 1983 provides a cause of action for the deprivation of a constitutional or federal statutory right by a "person" acting under color of state law. *See* 42 U.S.C. § 1983. However,

"the doctrine of sovereign immunity under the Eleventh Amendment[4] . . . prevent[s] a state from being sued by one of its own citizens without its consent." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001) (footnote added). Thus, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court "created an exception to this general principle by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. at 159–60). As explained by the Supreme Court, "[t]he theory of [*Ex parte*] *Young* was that an unconstitutional statute is void, and therefore does not 'impart to [the official] any immunity from responsibility to the supreme authority of the United States.'" *Id.* (third alteration in original) (quoting *Ex parte Young*, 209 U.S. at 159, 160). Therefore, under the *Ex parte Young* exception to Eleventh Amendment immunity, a federal court may "issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). "The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Waste Mgmt.*, 252 F.3d at 330.

Moreover, at the motion to dismiss stage, the Court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal

---

[4] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

law." *Constantine*, 411 F.3d at 496 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002). *See S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008) ("For purposes of Eleventh Amendment analysis, it is sufficient to determine that [the plaintiff] alleges facts that, if proven, would violate federal law and that the requested relief is prospective."). In so doing, the Court "do[es] not consider the merits of [Plaintiffs'] claims; it is enough that the complaint *alleges* an ongoing violation of federal law." *Constantine*, 411 F.3d at 496. *See D.T.M. ex rel. McCartney v. Cansler*, 382 F. App'x 334, 338 (4th Cir. 2010) ("[I]t is sufficient for Plaintiffs' suit to *allege* an ongoing violation of federal law; actually *proving* such an ongoing violation is unnecessary [at the motion to dismiss stage].")

Plaintiffs' Complaint alleges the following:

    (i)    that "[t]he provisions of the registry law challenged herein have been retroactively applied to" Plaintiffs, (ECF No. 33 ¶¶ 25, 38, 53);

   (ii)   that the burdens imposed by the registry law, along with tis history, "demonstrate the intent to punish and/or create the effect of punishment," (*id.* ¶ 218);

  (iii)   that the challenged provision of the registry law "inflict both directly and indirectly what has been regarded in our history and traditions as punishment," (*id.* ¶ 225);

  (iv)   that "[t]he provisions of the registry law challenged herein, both directly and indirectly, impose affirmative disabilities and restraints on registrants," (*id.* ¶ 240);

   (v)   that the "registry law is not reasonably related to a legitimate non-punitive purpose," (*id.* ¶ 260);

  (vi)   that "[t]he extent and duration of registry requirements are substantially greater than necessary to meet the legislature's avowed purpose," (*id.* ¶ 262); and

(vii) that the retroactive application of the challenged provisions of the registry law "make[s] more burdensome the punishment imposed for offenses committed prior to the enactment of that law, (*id.* ¶¶ 277–281).

If true, these claims allege ongoing violations of the *Ex Post Facto* Clause[5] which "prohibits the application of laws that retroactively 'increase the punishment for criminal acts.'" *United States v. Rooks*, 596 F.3d 204, 213 n.10 (4th Cir. 2010) (footnote added) (quoting *United States v. O'Neal*, 180 F.3d 115, 121 (4th Cir. 1999)). The Court therefore concludes that Plaintiffs' allegations satisfy the Court's "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law." *Constantine*, 411 F.3d at 496.

Even where the Complaint alleges an ongoing violation of federal law, in order for the *Ex parte Young* exception to apply, a "special relation" must exist "between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar." *Waste Mgmt.*, 252 F.3d at 331 (quoting *Ex parte Young*, 209 U.S. at 157). *See Lytle v. Griffith*, 240 F.3d 404, 412 (4th Cir. 2001) ("The [*Ex parte*] *Young* exception is limited . . . by its requirement that named state officials bear a special relation to the challenged statute."). This "special relation" "requires *proximity to* and *responsibility for* the challenged state action." *Wright v. North Carolina*, 787 F.3d 256, 261–62 (4th Cir. 2015) (quoting *S.C. Wildlife Fed'n,* 549 F.3d at 333).

The Court concludes that Plaintiffs have sufficiently alleged that Defendants have a special relation to the enforcement of the challenged provisions of the registry law. In the Complaint, Plaintiffs specifically allege that a violation of the challenged provisions of the registry law is a felony offense. (ECF No. 33 ¶¶ 88, 131, 168, 221, 244.) With respect to the

---

[5] The United States Constitution provides that "[n]o state shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1.

Attorney General, Plaintiffs allege that he has statutory authority, "through special prosecutors, to bring or assist in criminal suits upon request of a district attorney." (*Id.* ¶ 13–17.) As this Court stated in *Does 1–5 v. Cooper*, "*Ex parte Young* itself held that the state attorney general's duties, which included the right and the power to enforce the statutes of the state, sufficiently connected him with the duty of enforcement to make him a proper party to an action challenging a state statute's constitutionality." 40 F. Supp. 3d 657, 673 (M.D.N.C. 2014) (citing *Ex parte Young*, 209 U.S. at 158–61). Here, as alleged by Plaintiffs, the Attorney General has the statutory authority to prosecute or assist in the prosecution of criminal actions. (*See* ECF No. 33 ¶¶ 14–16; *see also* N.C. Gen. Stat. §§ 114-2, 114-11.6.) Plaintiffs have thus sufficiently alleged that the Attorney General has enough of a connection to the enforcement of North Carolina criminal laws to satisfy the special relation requirement of *Ex parte Young* and thereby avoid the Eleventh Amendment bar. *See Does 1–5*, 40 F. Supp. 3d at 674 (finding that the Attorney has statutory authority to enforce a violation of the challenged statute and, "[a]s such, [the] Attorney General . . . is a proper defendant in th[e] lawsuit"); *but see McBurney*, 616 F.3d at 399–401 (affirming dismissal of Virginia's Attorney General, in part, because the Attorney General lacked any specific statutory authority to enforce the challenged statute).

Similarly, with respect to the Individual DA's, Plaintiffs allege that the Individual DA's "each have statutory authority under N.C. [Gen. Stat.] § 7A-61 to prosecute individuals for violations of registry laws," and that "[t]he State has not disclaimed any intention of enforcing [the challenged] provisions of the registry law against either the individual Plaintiffs or the affected members of NC RSOL." (ECF No. 33 ¶¶ 19, 21.) The Court concludes that such allegations are sufficient to show that the Individuals DA's have proximity to and

responsibility for enforcement of the challenged provisions of the registry law. *See Wright*, 787 F.3d at 261–62.

In light of the above, the Court finds that the *Ex Parte Young* exception to Eleventh Amendment immunity applies in this action. Accordingly, Defendants' motion to dismiss on this basis will be denied.

### B.   <u>Standing</u>

Defendants next argue that "[t]his action nevertheless should be dismissed pursuant to Rule 12(b)(1) because Plaintiffs lack standing to sue." (ECF No. 42 at 6.) Under Article III of the United States Constitution, the jurisdiction of a federal court is limited to cases and controversies. U.S. Const. art. III, § 2. Standing to sue, therefore, "ensure[s] that federal courts do not exceed their authority." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish Article III standing at the motion to dismiss stage, Plaintiffs must plausibly allege that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs bear the burden of establishing these elements. *Lujan*, 504 U.S. at 561. "Where, as here, a case is at the pleading stage, [Plaintiffs] must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth,* 422 U.S. at 518). "The standing requirement must be satisfied by individual and organizational plaintiffs alike."[6] *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005).

---

[6] "[A]n organizational plaintiff may establish associational standing to bring an action in federal court on behalf of its members." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (internal quotation marks omitted). Associational standing exists when: "(a) its members would otherwise have standing to sue in their

*1. Injury-in-fact*

Defendants argue that Plaintiffs' Complaint lacks "any concrete allegations or facts implicating that [Plaintiffs] are facing prosecution, but instead . . . only bald statements in the complaint." (ECF No. 42 at 8.) Defendants also argue that "Plaintiffs have failed to plead facts sufficient to allege a credible threat of prosecution by Defendants." (*Id.* at 5.)[7] Plaintiffs argue, in response, that they are "clearly suffering an injury in fact in that they cannot engage in constitutionally protected activity without an objectively reasonable fear of prosecution." (ECF No. 44 at 9 (internal quotation marks omitted).)

To satisfy the first element of standing—injury-in-fact—"a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "The injury-in-fact requirement ensures that plaintiffs have a 'personal stake in the outcome of the controversy.'" *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (quoting *Warth*, 422 U.S. at 498). Where, as here, Plaintiffs "seek declaratory and injunctive relief, they must establish an ongoing or future injury in fact." *Id.* The Supreme Court has

---

own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see White Tail Park*, 413 F.3d at 458. "Associational standing may exist even when just one of the association's members would have standing." *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 186 (4th Cir. 2007).

[7] Although Defendants appear to make this contention in support of its Eleventh Amendment immunity argument as well as its standing argument, (*see* ECF No. 42 at 5–6, 8), the Court will consider this argument in the context of its standing analysis. *See N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) ("When a plaintiff faces a credible threat of prosecution under a criminal statute he has standing to mount a pre-enforcement challenge to that statute."); *Richmond Med. Ctr. for Women v. Gilmore*, 11 F. Supp. 2d 795, 804 (E.D. Va. 1998) ("[T]o fulfill the standing requirement in challenging the constitutionality of a criminal statute, the plaintiff must allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute,' and that 'there exists a credible threat of prosecution thereunder.'" (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979))).

"repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alteration in original) (quoting *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990)). *See Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 159 (2014) ("[W]e have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent.").

As explained by the Fourth Circuit, a plaintiff's "allegations of a fear and risk of future arrest can satisfy the injury-in-fact requirement for prospective relief . . . if [1] [P]laintiffs allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute[;] and [2] there exists a credible threat of prosecution thereunder.'" *Kenny*, 885 F.3d at 288 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Applying this standard, the Court finds that Plaintiffs have sufficiently alleged an injury-in-fact. First, Plaintiffs have sufficiently alleged an intention to engage in conduct currently proscribed by the challenged provisions of the registry law. In particular, Plaintiffs allege the following:

> The Plaintiffs, including NARSOL and NC RSOL on behalf of their members, wish to engage in conduct proscribed by the provisions of the registry law challenged herein and are reasonably concerned that they will be prosecuted for doing so.
>
> . . .
>
> [Plaintiff] John Doe has been barred from housing due to the restrictions of 2006 N.C. Sess. Laws 247; banned from libraries, parks, and numerous other fora due to 2008 N.C. Sess. Laws 117 and 2016 N.C. Sess. Laws 102; has been prevented from obtaining a "P" endorsement on his driver's license due to 2009 N.C. Sess. Laws 491; and is hesitant to engage in online discourse due to 2008 N.C. Sess. Laws 220.

But for these restrictions, [Plaintiff] John Doe would have bought housing, would go to the library, parks, and other public and private fora made off-limits by 2008 N.C. Sess. Laws 117 and 2016 N.C. Sess. Laws 102, would have sought a "P" endorsement for his driver's license[s], and would engage in online discourse.

…

James Doe 1[8] has been barred from housing due to the restrictions of 2006 N.C. Sess. Laws 247; banned from libraries and political meetings due to 2008 N.C. Sess. Laws 117 and 2016 N.C. Sess. Laws 102; and is hesitant to engage in online discourse due to 2008 N.C. Sess. Laws 220.

But for these restrictions, James Doe 1 would have bought housing, would go to the library and attend political meetings, and would engage in online discourse.

. . .

James Doe 2[9] has been barred from housing due to the restrictions of 2006 N.C. Sess. Laws 247; banned from libraries, parks, and other public fora due to 2008 N.C. Sess. Laws 117 and 2016 N.C. Sess. Laws 102; and is hesitant to engage in online discourse due to 200[8] N.C. Sess. Laws [220].

But for these restrictions, James Doe 2 would have bought housing, would go to the library, parks, and other public fora, and would engage in online discourse.

. . .

---

[8] Plaintiff NC RSOL identifies James Doe 1 as a member of its organization who is subject to the challenged provisions of the registry law, and who has allegedly suffered harm. (ECF No. 33 ¶¶ 34, 36, 38–41.) *See So. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("'[T]o show that its members would have standing, an organization must 'make specific allegations establishing that at least one *identified member* has suffered or would suffer harm.'" (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009))).

[9] Plaintiff NARSOL identifies James Doe 2 as a member of its organization who is subject to the challenged provisions of the registry law, and who has allegedly suffered harm. (ECF No. 33 ¶¶ 49, 51, 53–56.) *See So. Walk at Broadlands Homeowner's Ass'n*, 713 F.3d at 184 ("'[T]o show that its members would have standing, an organization must 'make specific allegations establishing that at least one *identified member* has suffered or would suffer harm.'" (quoting *Summers*, 555 U.S. at 498)).

> John Doe specifically desires to use the public library, go to movies, sporting events, recreation parks, and other areas made off-limits to him by [portions of the challenged provisions].
>
> [John Doe] also wishes to engage in political rallies and other group activities, but cannot as these functions are usually held in a place made off-limits by [portions of the challenged provisions].
>
> John Doe would exercise these rights if not for the ban imposed by statute.
>
> Many members of NARSOL and NC RSOL—specifically including James Does 1 and 2—similarly desire to go to libraries, public meetings, parks, and the like but cannot because of [portions of the challenged provisions of the registry law].
>
> Many of these members wish to exercise those rights and would if not for the ban imposed by the statute.

(ECF No. 33 ¶¶ 20, 27–28, 40–41, 55–56, 163–67.)  Given these allegations that Plaintiffs intend to engage in conduct proscribed by the challenged provisions of the registry law, Plaintiffs have satisfied the first prong necessary to allege injury-in-fact.

With respect to the second prong of alleging such an injury-in-fact—whether Plaintiffs face a credible threat of prosecution—"it is not necessary that [Plaintiffs] first expose [themselves] to actual arrest or prosecution to be entitled to challenge a statute that [they] claim[ ] deters the exercise of [their] constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).  Thus, Defendants' argument that Plaintiffs fail to allege that they are "facing prosecution," (ECF No. 42 at 8), is unavailing.  "[T]here is a credible threat of future enforcement so long as the threat is not imaginary or wholly speculative, . . .  or wholly conjectural." *Kenny*, 885 F.3d at 288 (citations and internal quotation marks omitted).  Moreover, the "[t]hreat of prosecution is especially credible when defendants have not 'disavowed enforcement' if plaintiffs engage in similar conduct in the future." *Id.* (quoting

*Driehaus*, 573 U.S. at 165).  Failure to comply with the provisions of the registry law is a felony. N.C. Gen. Stat. §§ 14-208.11, 14-208.18(h).  (*See also* ECF No. 33 ¶¶ 88, 131, 168, 221, 244.) Here, Plaintiffs specifically allege that "[t]he State has not disclaimed any intention of enforcing the[ ] [challenged] provisions of the registry law against either the individual Plaintiff[ ] or the affected members of NC RSOL."  (*Id.* ¶ 21.)  Further, Defendants do not contend that they will not enforce the challenged provisions of the registry law, and this Court "see[s] no reason to assume otherwise," *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988).  Thus, Plaintiffs face a credible threat of future arrest or prosecution should they fail to comply with the provisions of the registry law.  Plaintiffs have, therefore, "alleged an actual and well-founded fear that the [challenged provisions of the registry] law will be enforced against them." *Id.*  Accordingly, the Court finds that Plaintiffs have sufficiently alleged an injury-in-fact.  *See Does 1–5*, 40 F. Supp. 3d at 671–72 (concluding that "where the State has not disclaimed any intention of enforcing [the challenged provision of the registry law], Plaintiffs need not actually violate [that statute], or be proactively threatened with prosecution prior to violation, in order to have standing to challenge its constitutionality.").

## 2. *Traceability and Redressability*

Having sufficiently alleged an injury-in-fact, the Court finds that Plaintiffs clear the other two hurdles for standing—namely, causation and redressability.  To satisfy the causation requirement, there must be a "causal connection between the injury and the conduct complained of that is 'fairly traceable,' and not 'the result of the independent action of some third party not before the court.'" *Cooksey v. Futrell*, 721 F.3d 226, 238 (4th Cir. 2013) (quoting *Frank Krasner Enters., Ltd. v. Montgomery Cty.*, 401 F.3d 230, 234 (4th Cir. 2005)).  Redressability

is satisfied "where there is a non-speculative likelihood that the injury would be redressed by a favorable judicial decision." *Id.* (internal quotation marks omitted).

Here, despite Defendants' argument to the contrary, there is a causal connection between the injury about which Plaintiffs complain—*i.e.*, the fear and risk of future prosecution by Defendants—and the conduct of which Plaintiffs complain—*i.e.*, the alleged retroactive punishment in violation of *Ex Post Facto* clause. With respect to redressability, a favorable decision from this Court would enjoin Defendants from enforcing the challenged provisions against anyone, including Plaintiffs. Under such a scenario, Plaintiffs would be able to engage in conduct proscribed by the challenged provisions of the registry law without fear of prosecution. The Court therefore concludes that, in addition to having plausibly alleged an injury-in-fact, Plaintiffs have also alleged sufficient facts to establish causation and redressability and, thus, standing to sue. As a result, Defendants' motion to dismiss for lack of standing will be denied.

C.   **Statute of Limitations**

Defendants next argue that "[t]he three year statute of limitations for claims brought under 42 U.S.C. § 1983 bars the *Ex Post Facto* claims alleged by the [P]laintiffs." (ECF No. 42 at 12 (emphasis added).) Plaintiffs argue, in response, that "[w]hile the statute of limitations may work to bar suit claiming a discreet deprivation of rights, it does not insulate the State from a general constitutional challenge." (ECF No. 44 at 11.)

The applicable statute of limitations for Section 1983 actions is three years. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) ("[B]ecause the state limitations period governing a claim for damages for personal injuries applies to a § 1983 action, regardless of

the allegations in the complaint, the three-year statute of limitations set forth in N.C. Gen. Stat. § 1-52(5) . . . controls); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991) ("There is no federal statute of limitations for § 1983 claims, so the state limitations period which governs personal injury actions is applied."); N.C. Gen. Stat § 1-52(16) (establishing three-year statute of limitations for personal injury).

Although the applicable limitations period is dictated by state law, the accrual of a Section 1983 claim is governed by federal law. *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995). "Under federal law[,] a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id.* Pursuant to this rule, it would appear that, consistent with Defendants' argument, Plaintiffs' claims began to accrue in 2006, 2008, and 2009—the effective dates for four of the challenged amendments to the registry law—and, as such, "[t]he three year statute of limitations for Plaintiffs' claims [as to those challenged amendments] expired in 2009, 2011, and 2012, respectively." (ECF No. 42 at 12.) However, as "an exception to the ordinary accrual rule[,] . . . the clock on any challenge to the constitutionality of a statute, whose continued application works an ongoing constitutional violation, starts to run anew, every day that the statute applies." *Wallace v. New York*, 40 F. Supp. 3d 278, 302 (E.D.N.Y. 2014). As recognized by the Fourth Circuit, "[t]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations." *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989) (alteration in original) (citation omitted). *See Poe v. Lynchburg Training Sch. & Hosp.*, 518 F. Supp. 789, 794 (W.D. Va. 1981) ("Since the alleged deprivation is of a continuing nature, the action . . . is obviously not time barred." (citing *Williams v. Norfolk & W. Ry. Co.*,

530 F.2d 539, 542 (4th Cir. 1975))). Therefore, because Plaintiffs in this action are seeking prospective relief for the continued enforcement of allegedly unconstitutional amendments to the registry law, the statute of limitations does not bar Plaintiffs' claims. Defendants' motion to dismiss on this basis will be denied.

### D. Abstention

Defendants next argue that "[t]his Court should abstain from ruling on the constitutionality of the challenged state laws and dismiss the complaint." (ECF No. 42 at 14.) Plaintiffs, on the other hand, contend that this case presents no grounds for the Court to abstain. (ECF No. 44 at 12.)

The Supreme Court has "often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (citing cases). *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (explaining that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them"). However, "a federal district court is vested with discretion" to abstain from exercising its jurisdiction "in deference to state court resolution of underlying issues of state law." *Harman v. Forssenius*, 380 U.S. 528, 534 (1965). "Abstention doctrines constitute 'extraordinary and narrow exception[s]' to a federal court's duty to exercise the jurisdiction conferred on it." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (alteration in original) (quoting *Quackenbush*, 517 U.S. at 716, 728). It is therefore well-settled that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813; *Gannett Co. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002). The Supreme Court has "carefully defined" the circumstances under which

abstention is permissible. *Martin*, 499 F.3d at 363 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989)). The two abstention doctrines which Defendants appear to contend[10] are applicable are the *Pullman* abstention doctrine[11] and the *Burford* abstention doctrine.[12]

*Pullman* abstention may be invoked where: (1) there is "an unclear issue of state law presented for decision"; and (2) the resolution of that unclear issue of state law "may moot or present in a different posture the federal constitutional issue such that the state law issue is potentially dispositive." *Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983) (internal quotation marks omitted). *See Nivens v. Gilchrist*, 444 F.3d 237, 245 (4th Cir. 2006) ("*Pullman* abstention requires federal courts to abstain from deciding an unclear area of state law that raises constitutional issues because state court clarification might serve to avoid a federal constitutional ruling."). As explained by the Supreme Court, "[b]y abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies.'" *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (quoting *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)).

*Burford* abstention applies in circumstances where "there exists (1) a state-created regulatory scheme which would be disrupted by federal court review[,] and (2) a specially-created forum with specialized competence in that particular area." *Stewart v. Hunt*, 598 F.

---

[10] It is unclear to the Court whether Defendants seek abstention under the *Pullman* or *Burford* doctrine. Nonetheless, because Defendants' argument on the abstention issue references both doctrines, the Court will consider whether abstention under either doctrine is appropriate.

[11] *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

[12] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

Supp. 1342, 1349 (E.D.N.C. 1984) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 327 (1943)).

"The primary consideration is whether the provision, statute or action to be reviewed in federal court requires such highly specialized expertise so that it would be better to defer to the state adjudicative bodies specifically created for handling such matters." *Id.*

The Court finds that neither the *Pullman* nor *Burford* abstention doctrine is applicable here. First, with respect to the *Pullman* abstention doctrine, Plaintiffs' lawsuit raises no issue requiring an interpretation or clarification of an unclear state law. Plaintiffs do not contend that the challenged provisions of the registry law are unclear or ambiguous. Rather, Plaintiffs mount a facial challenge to the constitutionality of certain provisions of the registry law. (*See* ECF No. 33.) "Thus, abstention is not indicated if the state law is clear on its face." 17A Charles Alan Wright, et al., *Federal Practice and Procedure* § 4242, at 331–32 (3d ed. 2007). The Supreme Court has explained that "[w]here there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971). Defendants appear to argue, in part, that abstention is appropriate here because Plaintiffs' "specific challenge to the North Carolina registry laws has not been previously litigated in North Carolina." (ECF No. 42 at 13.) However, "when a statute is not ambiguous, there is no need to abstain even if state courts have never interpreted the statute." *City of Houston v. Hill,* 482 U.S. 451, 469 (1987). In essence, "[s]ince the naked question" before this Court, "uncomplicated by ambiguous language," is whether the challenged provisions of the registry law are facially unconstitutional, abstention from federal jurisdiction is not required. *Haw. Hous. Auth.*, 467 U.S. at 237 (internal quotation marks omitted).

The Court further notes that in a Section 1983 action, "Congress has deliberately afforded the [S]ection 1983 plaintiff an alternative federal forum." *Pittman v. Cole*, 267 F.3d 1269, 1286 (11th Cir. 2001) (quoting *Duke v. James*, 713 F.2d 1506, 1510 (11th Cir. 1983)). To that end,

> [i]t is not for the courts to withdraw that jurisdiction which Congress has expressly granted under [S]ection 1983 where such a withdrawal is contrary to the purpose of Congress in extending that alternative forum. In this regard, the *Pullman* doctrine is narrow and is tightly circumscribed. A federal court must grapple with difficult constitutional questions that confront it squarely. The abstention doctrine is an exception to this rule, to be exercised only in *special* or *"exceptional"* circumstances.

*Id.* (quoting *Duke*, 713 F.2d at 1510). Given that, as previously stated, this action does not involve an unclear or ambiguous issue of state law, the resolution of which could potentially dispose of Plaintiffs' federal constitutional claim, *Pullman* abstention is not warranted.

Second, Defendants appear to argue that *Burford* abstention is appropriate because the "issues raised in the [Complaint] are based on a constitutional challenge to specific North Carolina statutory laws which are of substantial importance to the safety of the citizens in North Carolina and to the State's ability to exercise its police powers." (ECF No. 42 at 14.) "For *Burford* abstention to be appropriate, however, a 'complex state regulatory scheme . . . for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded' must also be present." *Meredith v. Talbot Cty.*, 828 F.2d 228, 232 (4th Cir. 1987) (quoting *Browning–Ferris, Inc. v. Baltimore Cty.*, 774 F.2d 77, 79 (4th Cir. 1985)). Here, Plaintiffs' challenge to the constitutionality of certain amendments to the registry law does not implicate a state administrative proceeding. *See Gracious Living Corp. v. Colucci & Gallagher, PC*, 216 F. Supp. 3d 662, 671 (D.S.C. 2016) ("Federal courts usually utilize

when they sit in diversity jurisdiction to hear challenges to state agency proceedings." (citing *Browning–Ferris*, 774 F.2d at 77). Nor does the Court find that its adjudication of the federal claim in this action matter would "unduly intrude upon [a] complex administrative process[ ]," *Martin*, 499 F.3d at 364, particularly in this case where "[t]he right alleged is . . . plainly federal in origin and nature," *McNeese v. Bd. of Educ.*, 373 U.S. 668, 674 (1963). Under these circumstances, the Court concludes that *Burford* abstention is not applicable. Accordingly, Defendants' motion to dismiss on abstention grounds will be denied.

### E.    Failure to State a Claim pursuant to Rule 12(b)(6)

Finally, Defendants argue that "Plaintiffs fail to plead plausible facts to establish the legal sufficiency of their *Ex Post Facto* claims as well as fail[ ] to state a claim for which relief may be granted and therefore the [Complaint] should be dismissed." (ECF No. 40 at 2 (emphasis added).) The enactment of *Ex Post Facto* laws is prohibited by the United States Constitution. *See* U.S. Const. art. I § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law."). An *Ex Post Facto* law is a "retrospective" law that applies "to events occurring before its enactment" and which "disadvantage[s] the offender affected by it . . . by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (internal quotation marks omitted).

In this action, Plaintiffs have alleged that the retroactive application of the challenged amendments to the registry law violate the *Ex Post Facto* clause. (*See* ECF No. 33 ¶¶ 277–281.) Defendants argue that the Complaint fails to state a claim for relief because the challenged amendments are regulatory and do not impose additional punishment. (*See* ECF No. 42 at

23

14–22.)  In support of their position, Defendants primarily rely on *Smith v. Doe*, 538 U.S. 84 (2003).  (*See generally* ECF No. 42 at 14–20.)

In *Smith*, the Supreme Court considered, for "the first time," whether "a sex offender registration and notification law constitute[d] retroactive punishment forbidden by the *Ex Post Facto* Clause." *Smith*, 538 U.S. at 92.  There, the Court held that sex offender registration laws do not violate the *Ex Post Facto* clause if they establish a civil regulatory scheme rather than criminal punishment.  *Smith*, 538 U.S. at 92–93.  The Supreme Court in *Smith* established the framework for considering such *Ex Post Facto* challenges by adopting a two-part test: (1) whether the intent of the legislature was to impose punishment; and (2) if not, "whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'"  *Id.* at 92 (alteration in original) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)).

With respect to the first prong, the Court in *Smith* noted that "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."  *Id.* (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)).  Plaintiffs argue that they have alleged facts "supporting the inference that the challenged statutes were passed with punitive intent."  (ECF No. 44 at 15–16.)  Specifically, Plaintiffs allege the following:

    (i)    that as to the challenged provisions, the registry laws "have changed from a database of criminal convictions to a punitive regime of affirmative restraint," (ECF No. 33 ¶ 7; *see id.* ¶¶ 68–116);

    (ii)    that the burdens imposed on registrants "along with the history of the registry law, demonstrate the intent to punish and/or

create the effect of punishment in violation of the *Ex Post Facto* clause," (*id.* ¶ 218);

(iii)   that the challenged provisions "have been codified as part of Chapter 14 of the North Carolina General Statutes—the North Carolina criminal code[,] [N.C. Gen. Stat. § 14-208.5 *et seq.*]," (*id.* ¶ 118);

(iv)   that, although N.C. Gen. Stat. § 14-208.5 states, in part, that "'[t]he General Assembly recognizes that sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration,' there is no evidence of any studies, testimony, or other factual basis for this finding in the legislative record," (*id.* ¶ 67 (quoting N.C. Gen. Stat. § 14-208.5)); and

(v)   that the reporting requirements reflected in the challenged provisions "are substantially similar to, and in many cases more burdensome, than the requirements of post-conviction supervised release imposed on non-registrants," (*id.* ¶ 142).

Defendants argue, however, that the State's legislative intent in enacting the sex offender registry laws was to develop a civil regulatory reporting system for public safety. (ECF No. 42 at 16.)   In support of this argument, Defendants cite two decisions from the North Carolina Court of Appeals—*In re Hall*, 768 S.E.2d 39 (N.C. Ct. App. 2014) and *State v. Pell*, 712 S.E.2d 189 (N.C. Ct. App. 2011)—in which that court reiterated that N.C. Gen. Stat. § 14-208.5 *et seq.*, which governs the sex offender registration process, is a "non-punitive, civil regulatory scheme," and therefore, its application does not violate the *Ex Post Facto* clause.[13] (*See* ECF No. 42 at 16 (quoting *Hall*, 768 S.E.2d at 45–46; *Pell*, 712 S.E.2d at 190).)

---

[13] Despite Defendants' reliance on decisions from the state appellate court, it is well-settled that federal courts are not bound by state court decisions on federal constitutional issues.  *See Joseph v. Blair*, 482 F.2d 575, 579 n.4 (4th Cir. 1973) ("Although entitled to great respect, and perhaps completely persuasive, the decision of a state court of last resort is not binding on a federal court on a federal constitutional question raised by persons who were not parties in the state litigation."); *Grantham v. Avondale, Indus., Inc.*, 964 F.2d 471, 473 (5th Cir. 1992) ("It is beyond cavil that we are not bound by a state court's interpretation of federal law regardless of whether our jurisdiction is based on diversity of citizenship or a federal question."); *Rural Water Dist. No. 3 v. Owasso Utils.*

As Plaintiffs allege, the challenged provisions of the registry law are codified as part of Article 27A of the North Carolina General Statutes which states, in pertinent part:

> It is the purpose of this Article to assist law enforcement agencies' efforts to protect communities by requiring persons who are convicted of sex offenses or of certain other offenses committed against minors to register with law enforcement agencies, to require the exchange of relevant information about those offenders among law enforcement agencies, and to authorize the access to necessary and relevant information about those offenders to others as provided in this Article.

N.C. Gen. Stat. § 14-208.5. On its face, this purpose does not reflect an intent by the State that its registry laws impose criminal punishment. Given that "considerable deference must be accorded to the intent as the legislature has stated it," *Smith*, 538 U.S. at 93, the Court finds that Plaintiffs' allegations fail to satisfy the first prong of the *Ex Post Facto* inquiry.

Having concluded the Plaintiffs have failed to allege a clear legislative intent to impose additional punishment, the Court must next consider whether Plaintiffs have plausibly alleged that the effect of the statutory scheme is so punitive that it negates the State's intention to deem it civil. *See id.* at 92. In analyzing the effects of the challenged provisions of the registry law, the Supreme Court has instructed the Court to consider five factors: (i) whether the law "has been regarded in our history and traditions as a punishment"; (ii) whether the law "imposes an affirmative disability or restraint"; (iii) whether the law "promotes the traditional aims of punishment"; (iv) whether the law "has a rational connection to a nonpunitive purpose"; and (v) whether the law "is excessive with respect to this purpose." *Id.* at 97. These

---

*Auth.*, 530 F. Supp. 818, 823 (N.D. Okla. 1979) ("Federal [c]ourts are not bound by [s]tate [c]ourt precedents on federal questions. The [f]ederal [c]ourts are not bound by [s]tate [c]ourt decisions as to the effect of the [f]ederal Constitution or . . . [f]ederal [s]tatutes. The [s]tate [c]ourt decision is persuasive authority only." (citations omitted)); *Speir v. Robert C. Herd & Co.*, 189 F. Supp. 432, 436 (D. Md. 1960) (stating that the federal district court "is not bound by decisions of state courts construing the federal constitution").

factors are "neither exhaustive nor dispositive . . . but are useful guideposts." *Id.* (citations and internal quotation marks omitted).

Defendants argue that "Plaintiffs have . . . failed to allege facts, as there exist no facts, that would render the effect of these laws so punitive as to make them in violation of the *Ex Post Facto Clause*." (ECF No. 42 at 17 (emphasis added).) Plaintiffs' Complaint alleges, among other things, that the challenged provisions of the registry law:

(i)      are similar to traditional forms of punishment, namely, shaming and banishment, (ECF No. 33 ¶¶ 226–36);

(ii)      are "more burdensome than" or "substantially similar to" restrictions "generally imposed under conditions of probation, parole, or supervised release," (*id.* ¶¶ 237–38);

(iii)      "impose affirmative disabilities and restraints on registrants" in that they "dictate where registrants may live"; where they may work; "what jobs they may have"; and they "prevent registrants from being present in a wide array of public, limited public, and private fora," (*id.* ¶¶ 240–43);

(iv)      subject registrants "to random checks by law enforcement and substantial in-person reporting requirements for which they are strictly liable under threat of felony prosecution," (*id.* ¶ 244);

(v)      "are substantially greater than necessary," in terms of "extent and duration," to meet the legislature's stated purpose, (*id.* ¶ 262; *see id.* ¶¶ 261–276); and

(vi)      "requires continued registration long past the period when there is any meaningful risk of recidivism," and applies to individuals "who have been found not to be dangerous to children, youths, or the public at large"; "who have never committed an offense against a minor"; "who have received full treatment and counseling"; and "who have no risk factors for future recidivism," (*id.* ¶¶ 264–68).

Accepting Plaintiffs' allegations as true, as the Court must at this stage,[14] the Court concludes that Plaintiffs have alleged a plausible claim that the challenged provisions of the registry law are so punitive in effect to violate the *Ex Post Facto* clause of the Constitution.[15] Because the Court concludes that Plaintiffs have stated a claim upon which relief may be granted, Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim must, therefore, be denied.

## IV.    CONCLUSION

Based on the above, the Court concludes: (i) that this action is not barred by Eleventh Amendment immunity, per the *Ex parte Young* exception; (ii) that Plaintiffs have sufficiently alleged an injury-in-fact, causation, and redressability and thus have standing to sue; (iii) that the three-year statute of limitations typically applicable to Section 1983 actions does not bar Plaintiffs' claims here seeking prospective relief for the continued enforcement of allegedly unconstitutional amendments to the registry law; (iv) that neither the *Pullman* abstention doctrine nor the *Burford* abstention doctrine is applicable in this case; and (v) that Plaintiffs have stated a plausible claim for relief for an alleged violation of the *Ex Post Facto* clause of the United States Constitution.

---

[14] *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) ("In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.").

[15] Having only evaluated the sufficiency of Plaintiffs' allegations, the Court makes no finding regarding the merits of Plaintiff's *Ex Post Facto* claims.

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, (ECF No. 40), is DENIED.

This, the 30th day of July, 2019.


/s/ Loretta C. Biggs
United States District Judge