IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-cv-53

| | |
|---|---|
| NATIONAL ASSOCIATION FOR RATIONAL SEXUAL OFFENSE LAWS; NC RSOL; and JOHN DOE, <br><br> Plaintiffs, <br><br> v. <br><br> JOSHUA STEIN, Attorney General of the State of North Carolina; <br><br> DISTRICT ATTORNEYS <br><br> Lorrin Freeman (District 10), Pat Nadolski (District 15A), and Kristy Newton (District 16A), <br><br> Defendants. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT REPORT OF DREW DOLL** |

NOW COME Defendants, by and through counsel, and files this Memorandum of Law in support of their motion to exclude the expert report of Drew Doll.

### STATEMENT OF THE CASE AND FACTS

Pursuant to Fed. R. Civ. P. 10(c), Defendants adopt and incorporate by reference the "Statement of the Case" and "Statement of Facts" set forth in their Memorandum in Support of Defendants' Motion for Summary Judgment filed on August 28, 2020. (D.E. 88).

## INTRODUCTION

Plaintiffs have disclosed Drew Doll as an expert witness to support their contention that North Carolina's sex offender registry ("the Registry") "replicates and is more severe than the requirements of probation and supervised release." (D.E. 92-1) Doll's opinions should be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny because Doll's analysis is largely anecdotal and does not rely upon any particular type of expertise, scientific methodology, or principles. Furthermore, Doll lacks the requisite knowledge, skill, experience, training, or education to qualify as an expert pursuant to Federal Rule of Evidence 702.

## ARGUMENT

-Legal Standard

District courts serve as gatekeepers to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). This "gatekeeper" function requires district courts to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The proponent of the expert testimony bears the burden to establish its admissibility by a preponderance of the evidence. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

Under Rule 702 of the Federal Rules of Evidence, which codifies the standard for admissibility set forth by *Daubert*, the court's role is to determine whether the "expert" is qualified to testify as an expert. Rule 702 provides:

An expert may testify only if he is qualified, "by knowledge, skill, experience, training, or education" and

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. To be reliable, the testimony "must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (*citing Daubert*, 509 U.S. at 590, 592–93).

In determining whether expert testimony is "sufficiently reliable to be admissible," a court generally considers several factors:

> First, "a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." A second question ... is "whether the theory or technique has been subjected to peer review and publication." Publication regarding the theory bears upon peer review; "the fact of publication (or lack thereof) in a peer reviewed journal will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised." Third, "in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error." Fourth, "'general acceptance'" is ... relevant to the reliability inquiry. "Widespread acceptance can be an important factor in ruling particular evidence admissible, and a

3

known technique which has been able to attract only minimal support with the community may properly be viewed with skepticism."

*Daubert*, 509 U.S. at 593–94. These factors are "neither definitive, nor exhaustive," and "particular factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [her] testimony." *Cooper,* 259 F.3d at 199-200.

Further, testimony based on subjective beliefs or unsupported speculation is inadmissible under Rule 702. *See, e.g., Daubert*, 509 U.S. at 589-90 ("The subject of an expert's testimony must be scientific ... knowledge … [T]he word 'knowledge' connotes more than subjective belief or unsupported speculation."). An expert's unsupported conclusion that something is what the expert states it is, simply because he says so, must fail. *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### A. Doll lacks the requisite knowledge, skill, experience, training, or education to qualify as an expert.

In support of their motion for summary judgment, Plaintiffs declined to submit the entirety of the report prepared by Mr. Doll. (D.E. 92-1) What portions of that report Plaintiffs did submit fail to explain how Mr. Doll has the requisite knowledge, skill, experience, training or education to qualify as an expert under *Daubert* and Rule 702.

In his deposition, Mr. Doll acknowledged that no one had previously retained him to serve as an expert witness, he had never written or furnished an expert report, and he had never testified in a court proceeding other than in his prior criminal case in which the State of North Carolina convicted him of embezzlement. (Ex. 1, pp 3-5, Dep. pp 6, 55-56,

4

64-65) Accordingly, no court has previously determined that Mr. Doll meets the requisite standard to state an expert opinion. Mr. Doll explained that he had received bachelor degrees in accounting and economics from High Point University in either 1988 or 1989. (Ex. 1, p 3, Dep. p 9) Those areas of study have no bearing on the punitive nature or effect of the Registry laws challenged by Plaintiffs herein. When asked to identify what he considered his areas of expertise, Mr. Doll listed the following: (1) the 1966 St. Louis Cardinals baseball team; (2) marksmanship with rifles and machine guns; (3) tax planning for individuals who were expatriates in Europe and Asia; (4) restructuring corporate pension plans; (5) Form 990s for nonprofits; and (6) preparing personal income tax returns. (Ex. 1, p 4, Dep. pp 56-57). None of this background, on its face, suggests that Mr. Doll would qualify as an expert based on skill, training, or education.

Presumably, then, Plaintiffs attempt to satisfy the Rule 702 and *Daubert* standards by relying on Mr. Doll's knowledge or experience. In fact, in his report in this case, in the section entitled "Background, Experience, and Qualifications," Mr. Doll seems to confirm as much, explaining that:

> For the past decade, I have worked with individuals on probation, post-release supervision, and the North Carolina sex offender registry to assist them in finding employment, housing, and community structures. In various capacities I have worked with hundreds of individuals on probation, supervised release, and the North Carolina sex offender registry. Through this work I have become intimately familiar with the statutes, regulations, practical application, and practical effects of each of these systems.

(D.E. 92-1, p 2) In the section entitled "Bases of Opinions," Mr. Doll states that through his "work [he] is familiar with the actual conditions imposed upon [registrants] as well as

the practice of enforcement by state and local officials." (D.E. 92-1, p 3) Ultimately, he opines that "the North Carolina sex offender registry replicates and is more severe than the requirements of probation and supervised release." (D.E. 92-1, p 5)

Neither the practical, community-based experience possessed by Mr. Doll nor his familiarity with the laws of probation, post-release supervision, and sex offender registration in North Carolina gets Plaintiffs past the gate erected by *Daubert* and Rule 702. Nothing suggests that whatever "reasoning or methodology" underlies Mr. Doll's testimony is, in fact, "scientifically valid" or based on anything other than Mr. Doll's own observations. Accordingly, as the gatekeeper, this Court should exclude Mr. Doll as an expert witness.

### B. Doll's expert report should be excluded because it is based upon anecdotal evidence and shows no indicia of reliability.

Even if this Court concludes that Mr. Doll qualifies as an expert, it should still exclude his opinion because it lacks any indicia of reliability and appears based on anecdotal evidence. When an expert's opinions or conclusions are derived from experience alone, the court must require the witness to "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007); *see also Playtex Prods., Inc. v. Procter & Gamble Co.*, No. 02-CV-8046, 2003 WL 21242769 (S.D.N.Y. May 28, 2003) (holding that expert's conclusions were unreliable because they were "based on 'anecdotal conversations' she has had with some patients,

6

and not on any survey or scientific study"). Plaintiffs have satisfied none of the criteria set forth in *Wilson*.

When asked at his deposition to explain the basis of his expertise to compare and contrast North Carolina's laws relating to probation, post-release supervision, and the Registry, Mr. Doll testified as follows:

> Both as the – when I managed the house in Just a Clean House, and over the years of working for COSA and the coalition, each time we do an intake, I review whatever conditions of release and, where applicable, the registry that the individual has signed off on, either with probation, post-release, or with the sheriff's department.
>
> So I have seen over the years hundreds of conditions of release, hundreds of examples of where people have signed off on the registry. I have had thousands of discussions about how probation officers and deputies have applied specific conditions to individuals. I have spent hours in meetings and discussion with probation, post-release, and the sheriff's department around conditions of post-release, probation, and the sex offender registry and how those are going to be applied.
>
> I have had conversations with Scott Holmes and other lawyers around how different aspects of both the registry and probation and post-release apply to individuals.

(Ex. 1, p 9, Dep. pp 102-03) Elsewhere during the deposition, for example, Mr. Doll explained that his opinion about how sheriff's officers "routinely come" to the homes of registrants was based upon a single observation of a Durham County registrant in the spring of 2014 and "discussions" he has had "with individuals on the registry and with sheriff's deputies" in Durham County alone. (Ex. 1, pp 6-7, Dep. pp 81-83) Also, Mr. Doll testified that he had no data on whether law enforcement in the Durham community actually enforce the registry laws with greater, equal to, or lesser discretion than probation officers enforce

7

the conditions of probation. (Ex. 1, pp 8, Dep. pp 94-95) Importantly, Mr. Doll also explained that the vast majority of his experience was with Durham County registrants, although he "worked with" probably thirty registrants in Wake County, Charlotte-Mecklenburg, and Orange County, which consisted of attending meetings of the reentry councils in those jurisdictions attended by registrants, and had discussions "with coordinators for different services in those counties." (Ex. 1, pp 8, 10, Dep. pp 96, 106, 108)

The portions of Mr. Doll's expert report submitted by Plaintiffs and his deposition testimony fail to sufficiently establish how his experience justifies his conclusions, serve as an adequate basis for his opinions, or whether he has reliably applied that experience to his the facts of this case. Mr. Doll's opinion that the Registry's restrictions are more severe than the requirements of probation and supervised release should be excluded because those opinions are not based on the type of reliable science that *Daubert* requires. Rather, his opinions consist of exactly the type of *ipse dixit* and anecdotal evidence that *Daubert* forbids.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request the Court enter an order excluding the expert report and testimony of Drew Doll, and prohibit him from offering any opinion in this matter.

8

This the 21st day of September, 2020.

                JOSHUA H. STEIN
                Attorney General1

                /s/Tamika L. Henderson
                Tamika L. Henderson
                Special Deputy Attorney General
                N.C. State Bar No. 42398
                tlhenderson@ncdoj.gov
                N.C. Department of Justice
                P.O. Box 629
                Raleigh, NC  27602-0629
                Telephone: (919) 716-6566
                Fax: (919) 716-6763
                Attorney for Defendant Stein

                /s/Joseph Finarelli
                Joseph Finarelli
                Special Deputy Attorney General
                N.C. State Bar No. 26712
                jfinarelli@ncdoj.gov
                N.C. Department of Justice
                P.O. Box 629
                Raleigh, NC  27602-0629
                Telephone: (919) 716-6531
                Fax: (919) 716-6755
                Attorneys for Defendants
                Boone, Freeman, and Newton

## WORD COUNT CERTIFICATION

I hereby certify that this brief complies with the word limits of Local Rule 7.3(d) because, excluding the parts exempted by the Rule, the brief contains less than 6,250 words.

/s/<u>Tamika Henderson</u>
Tamika Henderson

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel for Plaintiff:

>Paul Dubbeling
>paul.dubbeling@gmail.com

This the 21st day of September, 2020.

>/s/Tamika L. Henderson
>Tamika L. Henderson
>Special Deputy Attorney General