UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NATIONAL ASSOCIATION FOR )
RATIONAL SEXUAL OFFENSE )
LAWS; *et al.* )
 )
    Plaintiffs, )
 ) Case No. 1:17-cv-53
    v. )
 )
JOSHUA STEIN, Attorney General )
of the State of North Carolina; *et al.* )
 )
    Defendants. )

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT REPORT OF DREW DOLL

NOW COME Plaintiffs in the above-captioned case, by and through undersigned counsel, and do hereby submit the following Response to Defendants' Motion to Exclude the Expert Report of Drew Doll.

### I. Background

Pursuant to the scheduling order entered into this case [D.E. 52 and minute entry 10/23/19] and Fed. R. Civ. Proc. 26(a)(2)(B), Plaintiffs disclosed to Defendants the expert report of Drew Doll on March 1, 2020. Exhibit 1. As stated in that report, Mr. Doll has worked with hundreds of individuals subject to probation, supervised release, and the strictures of the North

1

Carolina sex offender registry. *Id.* at 1. He has held positions with Durham Congregations, Associations, and Neighborhoods ("Durham CAN"), the Durham Chapter of Circles of Support and Accountability ("Durham CoSA"), and the Religious Coalition for Non-Violent Ministry. *Id.* at 2. He has assisted these individuals in finding employment, housing, and community social structures. *Id.* at 1. As stated, through this work he has become intimately familiar with the "statutes, regulations, practical application, and practical effects" of each of probation, supervised release, and the sex offender registry in North Carolina. *Id.* He is an expert on these topics.

At his deposition conducted July 14, 2020, one day prior to the extended close of discovery, Mr. Doll clarified that as part of his work with Durham CAN he had specifically conducted research on the barriers to employment of people released from prison. Exhibit 2 at 17-18. This research involved interviewing both the subjects and potential employers to identify the barriers. *Id.* at 18. Mr. Doll's work was used by Durham CAN to collect data and prepare reports that specifically identify issues related to employment of registered individuals. *Id.* at 33-34. From this work he is able to testify as to the unique employment difficulties facing registrants as opposed to persons "merely" on probation or supervised release. *Id.* at 100-102.

Mr. Doll further clarified that, in conjunction with law enforcement and as part of his work with Durham CoSa, he has for years prepared and taught classes on the legal proscriptions of probation, supervised release, and the sex offender registry. *Id.* at 58-59. He has also personally reviewed hundreds of conditions of release, had thousands of conversations regarding specific application of conditions, and hours in "meetings and discussion with probation, post-release and the sheriffs' department around conditions of post-release probation and the sex offender registry and how those are going to be applied." *Id.* at 102-103. In short, for the last ten years Mr. Doll has researched and taught the legal, practical and social effects of being on probation, supervised release, and the sex offender registry in North Carolina and offers testimony as to the ways these systems of post-release control compare and contrast.

At no time prior to the instant motion, either when Mr. Doll's report was first provided seven (7) months prior or in the two (2) months since Mr. Dolls deposition, have Defendants' objected to Mr. Doll's experience, competence, or expertise. Defendants have not noticed any rebuttal experts in this case.

3

## III. Argument

*a. Mr. Doll's testimony is rightfully admitted under Federal Rule of Evidence 702.*

Federal Rule of Evidence 702, which includes amendments made in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),[1] and the other seminal case, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (setting forth considerations for admissibility of "non-scientific" expert testimony), states that

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The specific factors the Court should consider in weighing the admissibility of evidence will vary with the case at issue. Fed. R. Evid. 702 advisory committee's note to 2000 amendment. At issue under the Rule is whether the proffered testimony is "reliable" and "helpful." *Id.*; *see also Kumho*, 526 U.S. at 141-42 ("[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to

---

[1] Per the Notes of the Advisory Committee on 2000 amendments.

4

its ultimate reliability determination."). The rejection of expert testimony is the exception rather than the Rule. Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

Defendants' argument misses this point because it relies exclusively on language from *Daubert* and cases regarding the admission of "scientific" testimony. D.E. 109 at 2-4. However, as both the text of Rule 702 and *Kumho* make clear, expert testimony can also be based on "other specialized knowledge," the admissibility of which turns on its helpfulness and reliability. 526 U.S. at 141. Specifically, expert testimony is admissible when it is based upon "general truths derived from . . . specialized experience." *Id.* (quoting Judge Learned Hand). The question becomes: Does the proffered testimony have a "valid . . . connection to the pertinent inquiry." *Id.*; *see also United States v. Wilson*, 498 F.3d 267, 274 (4th Cir. 2007) (noting that *Daubert* factors do not apply when considering "experiential expert testimony").

This case is an *Ex Post Facto* challenge to various provisions of the North Carolina sex offender registry laws. As detailed in various briefings before this Court, one of the "pertinent inquiries" is the comparison of these challenged provisions to the effects of traditional forms of punishment such as probation and supervised release. *See generally* D.E. 85 at 30-34.

As shown above, in this case, Mr. Doll's testimony and the opinions he offers are based upon his decade of work with hundreds of probationers, persons on supervised release, and persons on the sex offender registry. In his work he has reviewed hundreds of cases; has researched the effects of these strictures; has taught their meaning and application, and has worked directly with supervises, registrants, law enforcement, and employers.

Defendants do not argue that Mr. Doll's testimony would not be "helpful" to the trier of fact. Indeed, his testimony goes directly to one of the hearts of this case – the effects of the challenged registry provisions and the way these effects differ from "merely" being on probation or parole. Nor do Defendants present a cogent argument why Mr. Doll's experiential testimony is not sufficiently "reliable."

Under *Wilson*, 484 F.3d at 274, experiential expert testimony is admissible when the witness can explain "how [his] experience leads to the conclusion reached, why [his] experience is sufficient, and how [his] experience is reliably applied to the facts." – another way of framing the question "Is there a valid connection to the pertinent inquiry?". That bar is met here. The facts at issue here are the legal proscriptions applied to probationers, persons on supervised release, and registrants and how those proscriptions play out as practical limitations on employment, housing, social reintegration, and participation in civil life. Mr. Doll's experience is

6

"sufficient" in that it is based on literally hundreds of examples and is directly linked to this question in that he has been able to observe directly the proscriptions and their effects. Accordingly, his testimony is rightfully admitted under FRE 702. Experience derived from such extensive review and interviews is not "anecdotal" or unreliable.

*a. Even were Mr. Doll's testimony excluded under Federal Rule of Evidence 702 it is otherwise admissible.*

Even if Mr. Doll's experience does not give him "specialized knowledge" within the meaning of FRE 702, his testimony, including his opinions, are admissible under FRE 701. Under that rule, opinion testimony not based upon "scientific, technical, or other specialized knowledge within the scope of Rule 702" is admissible provided it is "rationally based on the witness's perception" and "helpful to clearly . . . determin[e] a fact in issue." *Id.*

Here, Mr. Doll's testimony is clearly (and rationally) based upon his perceptions – themselves acquired through review of actual records and experience within his field as a counselor for reintegrating felons. *See Buckman v. Bombardier Corp.*, 893 F. Supp. 547, 561 (E.D.N.C. 1995) ("Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience is a sufficient foundation for lay opinion testimony.") (internal quotation and citation omitted). There is no other reasonable way that an

7

individual could gain this experience. Moreover, his testimony is clearly helpful in that a juror would not be expected to know how probation, supervised release, and registry restrictions impact the lives of the persons subject to them. *Id.* at 562. (testimony is "helpful" when otherwise not known to the trier of fact).

## Conclusion

Mr. Doll's expertise is grounded in his decade of experience working with probationers, post-release supervisees, and registrants. Defendant's do not deny this experience; they merely argue that it does not meet the *Daubert* standard. But as subsequent Supreme Court and Fourth Circuit cases make clear, *Daubert* simply does not apply to expert testimony like Mr. Doll's. For his testimony, the relevant inquiry is whether a natural train of logic extends from the witness's experience to the opinion proffered. Clearly it does in this case. Whether specifically qualified as an expert or not, Mr. Doll's testimony is relevant, reliable, useful, and admissible.

Respectfully submitted this 12th day of October, 2020.

> */s/ Paul M. Dubbeling*
> Paul M. Dubbeling
> P.M. Dubbeling, PLLC
> 210 North Columbia Street
> Chapel Hill, NC 27514

8

(919) 635-6005 Telephone
(919) 404-7074 Facsimile
paul.dubbeling@pmdubbeling.com
NC Bar # 47014

9

# Certificate of Service

This is to certify that the undersigned has this date electronically filed the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT REPORT OF DREW DOLL** with the Clerk of Court using the Court's CM/ECF System, which will send notice to the following:

Tamika Henderson
Special Deputy Attorney General
Special Litigation Section
NC Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6566
Fax: 919-716-6553
tlhenderson@ncdoj.gov

Joseph Finarelli
NC Department of Justice
P.O. box 629
Raleigh, NC 27602
919-716-6531
Fax: 919-716-6761
jfinarelli@ncdoj.gov

This is the 12th day of October, 2020.

> */s/ Paul M. Dubbeling*
> Paul M. Dubbeling
> P.M. Dubbeling, PLLC
> 210 North Columbia Street
> Chapel Hill, NC 27514
> (919) 635-6005 Telephone
> (919) 404-7074 Facsimile
> paul.dubbeling@pmdubbeling.com
> NC Bar # 47014

## Certificate of Word Count

This is to certify that the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT REPORT OF DREW DOLL** does not exceed 6,250 words, including the body of the brief, headings, and footnotes.

This the 12th day of October, 2020.

*/s/ Paul M. Dubbeling*
Paul M. Dubbeling
P.M. Dubbeling, PLLC
210 North Columbia Street
Chapel Hill, NC 27514
(919) 635-6005 Telephone
(919) 404-7074 Facsimile
paul.dubbeling@pmdubbeling.com
NC Bar # 47014